Cite as 2025 Ark. App. 535

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CR-24-464

| | |
|---|---|
| MICHAEL MCCORMICK<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered November 5, 2025<br><br>APPEAL FROM THE POLK COUNTY CIRCUIT COURT<br>[NO. 57CR-19-84]<br><br>HONORABLE ANDY RINER, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Appellant Michael McCormick was convicted in May 2021 of one count of rape and one count of second-degree sexual assault. After this court affirmed his convictions, *McCormick v. State*, 2022 Ark. App. 259, McCormick filed a timely petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37 in the Polk County Circuit Court. Following a hearing, the circuit court entered an order on December 21, 2023, denying McCormick's petition. This timely appeal followed.

I. *Factual and Procedural Background*

A. McCormick's Trial

McCormick was charged with one count of rape and one count of second-degree sexual assault after his step-granddaughter, Minor Victim (MV), accused him of engaging in inappropriate behavior with her when she was twelve years old. According to MV, she would

frequently spend the night with McCormick and her grandmother, McCormick's wife, Evelyn. On New Year's Eve 2018, when she was twelve years old, all three of them were sleeping in the same bed. During the night, McCormick, who slept in the nude, woke MV up by touching her breasts under her bra. He also touched her on the inside and the outside of her vagina with his finger and put his penis into her vagina.

Several weeks later, MV was spending the night with her friend, Minor Child (MC), and MC's mother, Stevie Jo Merworth, when she disclosed to Merworth that McCormick "trie[d] to mess with her" while she slept. Merworth contacted the police, and Chief Deputy Sheriff Randy Jewell of the Polk County Sheriff's Office eventually took a statement from McCormick. McCormick told Jewell that MV spent the night with him and Evelyn about once a month, but she had stayed three times between Christmas and New Year's. McCormick said that one night, he felt MV touching his penis. Later that night, he said she was moving around in bed, so he reached over to feel what she was doing. He realized she was masturbating, and he admitted that he touched her around the outside of her vagina.

In late January 2019, MV gave an interview at the Children's Advocacy Center in Mena. She told the interviewer that "it has been going on for a while" and that McCormick had "done this ever since she was a little girl." She said the last time he put his fingers into her vagina and tried to put his penis into her vagina was the New Years's Eve incident. MV told the interviewer that she had told her friend, MC, who convinced her to tell Merworth. The interviewer also spoke to MC. MC told the interviewer that MV told her that McCormick was not the only person who had sexually abused her, adding that MV "said

apparently her dad did and someone's cousin." After speaking to MC, the interviewer spoke to MV again. MV denied that anyone else had abused her and denied having told anyone that.

McCormick was charged with one count of second-degree sexual assault and one count of rape in an information filed on May 15, 2019. The day before his jury trial was scheduled to begin, the State filed a motion in limine stating it believed McCormick would try to introduce evidence that MV had made previous allegations of sexual conduct against McCormick or against other individuals. The State noted that McCormick had not filed a written motion pursuant to the rape-shield statute, Arkansas Code Annotated section 16-42-101 (Supp. 2021), and it therefore asked the court to instruct the defense to refrain from making any mention of any prior sexual conduct of the victim or any allegation of sexual conduct that had been made by the victim.

McCormick filed a response in which he asserted that his purpose in questioning MV and MC was not to prove prior sexual contact but to show that MV had made inconsistent statements because she had denied making the statements regarding molestation by other individuals. He added that he had been unaware that the State was going to object to "what is unquestionably relevant testimony" until it filed its motion in limine on the eve of trial. He said he did not intend, either through direct or cross-examination, to elicit testimony about MV's past sexual conduct "but only testimony about claims made by her during the investigation of this case" in order to show that she had made inconsistent statements. Proof

3

that she had made inconsistent statements, he argued, would be relevant to the jury's assessment of MV's credibility.

At a hearing before the trial commenced, McCormick reiterated that he did not intend to get into instances of prior sexual conduct of the victim. Instead, he said that he wanted to point out that MC had told the CAC investigator that MV said she had also been abused by her father and a cousin, but MV denied having said that. McCormick added that there were other contradictory statements that he wanted to use to challenge MV's credibility. The circuit court, however, ruled that the testimony would be inadmissible under the Arkansas rape-shield statute but invited McCormick to "make a proffer of what you want to put on at the appropriate time." The court added that "inconsistencies of other types" might be admissible, but evidence of prior sexual conduct would clearly be encompassed by the rape-shield law. The State further agreed that if MV testified at trial and said something that was "inconsistent about the acts that we're alleging here today, . . . absolutely she can be cross examined on those. . . . It's just the prior allegations . . . allegedly made to a third party." During the course of the trial, however, McCormick never proffered the substance of MC's testimony. The jury went on to convict him of rape and second-degree sexual assault; he was sentenced to a total of fifty years' imprisonment.

## B.  McCormick's Direct Appeal

On appeal to this court, McCormick argued that the evidence was insufficient to support his convictions and that the circuit court erred in prohibiting him from impeaching MV's credibility with her allegedly inconsistent statements. This court affirmed on both

points. Specifically, as to McCormick's challenge to the court's impeachment ruling, this court held that the argument was not preserved because McCormick failed to proffer the evidence he sought to have admitted. *McCormick*, 2022 Ark. App. 259, at 5.

## C. Rule 37 Petition

After this court's mandate issued, McCormick filed a timely petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37. In his petition, he raised four allegations of ineffective assistance of counsel, two of which are pertinent to this appeal.[1] First, he argued that his trial counsel was ineffective when he failed to submit a written motion to introduce evidence of MV's prior inconsistent allegations as required by Arkansas Code Annotated section 16-42-101(b). Additionally, McCormick argued that his trial counsel was ineffective for failing to proffer the evidence that the court excluded under section 16-42-101. McCormick contended that because trial counsel failed to proffer the testimony, this court held that the argument was unpreserved for appeal and thus took "no action on assessing the trial court's error in excluding evidence."

McCormick also argued that his trial counsel was ineffective for failing to reasonably prepare for trial. Here, he asserted that counsel failed to (1) comply with the procedural requirements of Arkansas's rape-shield statute; (2) interview, subpoena, or call potential

---

[1]McCormick also alleged that trial counsel was ineffective for failing to communicate the terms of a proposed plea agreement to him and for failing to interview, subpoena, and call six character and mitigation witnesses. On appeal, however, he has abandoned these claims, and we therefore do not address them further. *See Stewart v. State*, 2014 Ark. 419, at 4, 443 S.W.3d 538, 542 (per curiam) (noting that "issues raised below but not argued on appeal are considered abandoned").

witnesses; (3) adequately discuss trial strategy with him; or (4) impress upon him the risks associated with testifying in his own defense.

## D. Rule 37 Hearing

The circuit court held a hearing on McCormick's Rule 37 petition on November 20, 2023. McCormick's trial counsel testified that he had been practicing law since 1978 and had retired two years previously. He said he had participated in over one hundred jury trials of which probably 90 percent had been criminal trials. McCormick's trial was supposed to be his last trial.

Counsel testified that he was aware of several statements by MV that were inconsistent with other statements she had given or were simply not believable. Counsel said that McCormick denied having sexual intercourse with MV and that he did not admit he purposely digitally penetrated her. For that reason, he said that the defense at trial, at least as to the second-degree sexual-assault charge, was that there was no purpose of sexual gratification. He admitted that certain statements McCormick had given to the police-- including those in which he said he touched all around MV's vagina--would have been damaging to his defense. In consulting with McCormick, he advised him that the only thing worse than having that statement come in at trial would be for him not to testify and deny MV's allegations. He said there was no physical evidence in the case; the sexual assault nurse examiner's report indicated that there were no physical findings of abuse; and there was no independent evidence that corroborated MV's accusations. Counsel said that for all those reasons, he did not think there was sufficient proof to convict McCormick of either rape or

6

sexual assault. He said he was aware that in rape cases, no corroboration is required, but he still felt that the case came down to whom the jury believed.

Counsel recalled that he and McCormick met several times in order to prepare him to testify. Counsel said that he actually had more time to prepare for trial because he was winding down his practice and did not have as many clients. Other than the State's last-minute motion in limine, he felt fully prepared for trial.

Regarding the rape-shield material, counsel said he was aware that MC had told investigators that MV told her that two other relatives had sexually abused her. He said that he never subpoenaed MC but instead intended to get that information into evidence by asking MV what she had told MC about the abuse. He said that he had never filed a rape-shield motion because he didn't think anything he was trying to bring in "would be something that would be covered under the rape-shield statute." He agreed that MV's accusation that two other people had abused her before would have been covered under the rape-shield statute, but his main point was to expose her inconsistent statements. On cross-examination on this point, he clarified that his intent was not to ask MV if the abuse had actually happened but to ask whether she had told MC that it had.

The State's motion in limine caught him off guard, he said, because he believed the inconsistent statements "just weren't rape-shield testimony." He said that if he had thought there was any chance the statements were covered by the statute, he would have filed the necessary motion; he just didn't believe it was covered under the rape-shield statute.

Regarding MC's testimony, counsel acknowledged that he probably should have made a proffer.

E.  Circuit Court's Ruling

At the end of the hearing, the court invited the parties to submit posttrial briefs.[2] The court subsequently entered an order denying McCormick's petition. Regarding McCormick's contention that trial counsel had been ineffective for failing to file a rape-shield motion before trial and failing to proffer any evidence in support, the court found as follows:

> It is undisputed that trial counsel did not file a rape-shield motion prior to trial, but failure to file a motion standing alone is not sufficient evidence of a constitutional infirmity. To prove that trial counsel was ineffective as a matter of constitutional law, the petitioner must also show that if a claim for the admission of evidence had been offered that it would have been effective.

> In this case, the state filed a motion in limine to prevent the introduction of "evidence that the victim has made previous allegations of sexual conduct against this defendant and/or other individuals." Defendant responded to the state's motion in writing. From what the court understood at trial, trial counsel sought to offer evidence that the complaining witness had told an acquaintance . . . that she had been sexually abused by not only her grandpa but also "by her father and a cousin." The complaining witness denied making this statement to [the acquaintance]. In trial counsel's opinion, this was a prior inconsistent statement, and he sought its admission because he believed that it went directly to the complaining witness's credibility. The court denied admission of the alleged inconsistent statement because it was entirely collateral. McCormick now argues that counsel's failure to file a rape-shield motion and/or to proffer the witness's testimony offends both the state and federal constitutions.

> It is the court's opinion that even if a rape-shield motion had been filed, the defendant has made no showing that his claim for admission of the evidence would

---

[2]Although the court references McCormick's posttrial brief in its order, the brief does not appear in our record.

8

have been effective. Under any set of circumstances, it is doubtful that [the acquaintance's] testimony could have been admissible at trial, nor would it have been appropriate for the court to allow inquiry into the matter. In cases involving rape of a minor, the appellate courts of this state have "uniformly and consistently excluded evidence of the minor's prior sexual activity because the only two issues to be determined are the fact of the occurrence of the prohibited activity and the age of the minor." *Bell v. State*, 2010 Ark 65, at 7 (citing *White v. State*, 367 Ark. 595, 242 S.W.3d 240 (2006)). "Generally, when consent is not an issue, the victim's prior sexual conduct with another person is entirely collateral." *Id.* (citing *State v. Blandin*, 370 Ark. 23, 257 S.W.3d 68 (2007)).

In his post-hearing brief, petitioner raises similar arguments regarding alleged prior incidents of sexual conduct between McCormick and the complaining witness. He claims that trial counsel should have filed a rape-shield motion asking that other prior allegations be admitted at trial to attack the complainant's credibility. Specifically, he avers that the prosecutrix made the following statements which were not offered at trial because of the court's rape-shield ruling: that the sexual assaults began when the complainant was approximately four years old, and that McCormick also assaulted the complainant when they were together alone at deer camp, and also that another sexual assault occurred when Evelyn McCormick discovered her husband in flagrante delicto with the complainant. McCormick now alleges that trial counsel was ineffective for failing to offer these statements at a rape-shield hearing as prior inconsistent statements. As stated above, under the logic that the court adopted in *Bell*, none of these alleged inconsistencies would have been admissible at trial.

(Footnotes omitted.) The circuit court also rejected McCormick's argument that trial counsel had been ineffective for failing to adequately prepare for trial. McCormick timely appealed from the circuit court's order.

II. *Standard of Review and Postconviction Framework*

This court will not overturn the denial of postconviction relief absent a finding of clear error. *Tiarks v. State*, 2025 Ark. App. 178, 709 S.W.3d 852. A finding is considered clearly erroneous when, despite some supporting evidence, our review of the entire record leaves us with a definite and firm conviction that an error has occurred. *Id.*

9

We review a defendant's ineffective-assistance-of-counsel claims using the two-step analysis outlined in *Strickland v. Washington*, 466 U.S. 668. *Id.* Under *Strickland*, a petitioner is required to show that his trial counsel's performance was deficient and that the deficiency prejudiced his defense. *Id.*

Regarding the threshold issue of deficiency, we presume that a trial counsel's performance was sufficient. *Holland v. State*, 2022 Ark. 138, 645 S.W.3d 318. To overcome that strong presumption, the petitioner must demonstrate specific acts and omissions that—when viewed from the trial counsel's perspective over the course of the trial—could not have been the result of "reasonable professional judgment." *Id.* at 2, 645 S.W.3d at 321. Allegations without factual substantiation are insufficient. *Thomas v. State*, 2022 Ark. 12, 637 S.W.3d 268. Furthermore, merely conclusory statements that one's counsel was ineffective cannot be the basis for postconviction relief. *Id.*

As for the remaining issue of prejudice, a petitioner must affirmatively demonstrate that the deficiency resulted in a prejudicial outcome. *Holland*, 2022 Ark. 138, at 2, 645 S.W.3d at 321. He must show that there is a reasonable probability that the fact-finder's decision would have been different absent trial counsel's deficiencies. *Id.* This is a high bar. If a Rule 37 petition fails at the threshold issue of deficiency, we need not address the remaining prong that weighs its potential prejudicial effect. *Arnold v. State*, 2022 Ark. 191, 653 S.W.3d 781.

III. *Arguments on Appeal*

A. The Rape-Shield Motion

In his first point on appeal, McCormick argues that the circuit court erred in finding that trial counsel was not ineffective "for ignoring the procedural requirements of Arkansas Code Annotated section 16-42-101 and for failing to preserve evidentiary issues for appellate review."

In his Rule 37 petition, McCormick asserted generally that trial "counsel [had] intended to question [MV] about her prior inconsistent allegations that directly pertained to the act for which [he] was prosecuted, but he failed to prepare and submit a written motion. As a result, [MV] was never impeached by her previous allegations." At the Rule 37 hearing, trial counsel's testimony focused on his intention to question MV about whether she had made prior inconsistent statements about having been assaulted by other family members. And in his posttrial brief, according to the circuit court, McCormick raised additional specific arguments regarding alleged prior incidents of sexual conduct between him and MV: "that the sexual assaults began when the complainant was approximately four years old, and that McCormick also assaulted the complainant when they were together alone at deer camp, and also that another sexual assault occurred when Evelyn McCormick discovered her husband in flagrante delicto with the complainant."

On appeal, however, McCormick specifically––and solely––asserts that because of counsel's failure to submit a written motion under the rape-shield statute to introduce evidence of MV's inconsistent statements, "*the jury was never informed that MV had previously*

*accused McCormick of only digitally penetrating her on the night in question.*" (Emphasis added.) He argues that such information would have been useful to impeach MV's credibility, which McCormick posits was critical to his defense.

We do not address this argument because McCormick neither presented it below nor obtained a ruling on it. Our general rule is that specific allegations of ineffectiveness of counsel must be pleaded, and specific issues of ineffectiveness of counsel cannot be raised for the first time on appeal. *Tisdale v. State*, 311 Ark. 220, 227, 843 S.W.2d 803, 807 (1992). This court will not consider new matters not raised in the Rule 37 petition for the first time on appeal unless they are so fundamental as to void the conviction.[3] *Frazier v. State*, 2016 Ark. 55, at 3, 482 S.W.3d 305, 309; *Boswell v. State*, 2023 Ark. App. 132, 699 S.W.3d 110.

Moreover, even assuming McCormick raised the digital-penetration argument before the circuit court, the court did not rule on it, as can be seen from its ruling that we set out in its entirety above. The failure to obtain a ruling on a Rule 37 issue at the circuit court level precludes review on appeal. *Matthews v. State*, 333 Ark. 701, 970 S.W.2d 289 (1998); *Torres-Garcia v. State*, 2025 Ark. App. 190, 711 S.W.3d 302; *Boston v. State*, 2023 Ark. App. 555, 681 S.W.3d 519; *Lacefield v. State*, 2020 Ark. App. 534.

## B. Failure to Prepare for Trial

In his second argument on appeal, McCormick contends that the circuit court erred in declining to find trial counsel ineffective for his lack of preparation at trial. To prevail on

---

[3]McCormick makes no claim that such is the case here.

a claim that trial counsel was ineffective for failing to adequately investigate and prepare for trial, a petitioner must show how a more searching pretrial investigation or better preparation would have changed the results of the trial. *Bond v. State*, 2013 Ark. 298, 429 S.W.3d 185 (per curiam). Specifically, the petitioner must delineate the actual prejudice that arose from the alleged failure to investigate and prepare for trial and demonstrate a reasonable probability that additional preparation and the information that would have been uncovered with further investigation could have changed the outcome of the trial. *Mason v. State*, 2013 Ark. 492, 430 S.W.3d 759.

The entirety of McCormick's argument on this point is as follows:

> At the Rule 37 hearing, counsel testified that he was actively winding down his legal practice at the time of McCormick's trial, because he was retiring. Counsel denied that it affected his preparation; however, the evidence of his performance in this case demonstrates otherwise. First, as previously discussed, counsel failed to introduce MV's prior inconsistent statements due to a procedural default. Second, he did not put on a case at the sentencing phase of the trial. Third, counsel did not file a motion in limine to exclude Rule 404(b) testimony. Due to that failure, [a witness] testified that McCormick was a rumored pervert at the jury trial without objection from counsel.

Clearly, McCormick does not state any additional relevant facts that trial counsel would have discovered or even assert that the outcome of the trial would have been different but for counsel's performance. As with any other claim of ineffective assistance of counsel, a petitioner cannot succeed merely by alleging that counsel was not prepared or did not spend enough time on his or her case. *Camargo v. State*, 346 Ark. 118, 129, 55 S.W.3d 255, 263 (2001). Rather, the petitioner still must show that the evidence or witnesses that would have been discovered had counsel properly investigated the case and that, but for counsel's lack

13

of preparation, there is a reasonable probability that the outcome of his trial or sentence would have been different. *Id.* Because McCormick has failed to make such a showing, he is not entitled to postconviction relief on this point. We therefore affirm on this point without addressing the substance of McCormick's argument.

Affirmed.

BARRETT and WOOD, JJ., agree.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, and *Drew Curtis*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christian Harris*, Sr. Ass't Att'y Gen., for appellee.